IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEREK WILLIAMS,

                          Plaintiff,                    OPINION AND ORDER

        v.
                                                        09-cv-485-wmc[1]

WILLIAM POLLARD and LT. THOMAS CAMPBELL,

                    Defendants.

        In this Court's October 23, 2009 order, plaintiff Derek Williams was granted leave

to proceed on the following three claims: (1) defendants William Pollard and Lt. Thomas

Campbell violated his procedural due process rights by either holding or upholding an unfair

disciplinary hearing; (2) Pollard violated his equal protection rights by upholding a harsher

punishment against him than the punishment given to a  white inmate involved in the same

incident; and (3) defendants violated his Eighth Amendment rights by placing him in harsh

conditions of confinement in segregation. Dkt. #7.  Defendants move for summary judgment

on all claims.  Dkt. #18.

        Williams has chosen not to respond to defendants' motion for summary judgment,

despite being advised that if he did not put into dispute a fact proposed by the defendants,

the court would conclude that the fact was undisputed.  "Procedure to be Followed on

---

        [1]  This case was reassigned to Judge Conley pursuant to a March 31, 2010
administrative order.

1

Motions for Summary Judgment," attached to the December 28, 2009, Preliminary Pretrial Conference Order, dkt. #12, at 19.   Accordingly, the court accepts as undisputed defendants' Proposed Findings of Fact.   Based on those undisputed facts, the Court concludes that a reasonable jury could not find defendants denied him due process or equal protection or violated his Eighth Amendment rights.   Accordingly,  defendants' motion will be granted.

## UNDISPUTED FACTS

### I.  PARTIES

Plaintiff Derek Williams is a prisoner at the Green Bay Correctional Institution in Green Bay, Wisconsin.  Defendant William Pollard is the warden of the institution and Lt. Thomas Campbell is a hearing officer at the institution.

### II.  CONDUCT REPORTS

On December 12, 2008, Sergeant Laufenberg issued Williams conduct report number 2050607 for violating Wisconsin Administrative Code § DOC 303.17, Fighting, for an incident involving inmate Dominic Sciortino.  Sciortino received conduct report number 2050608 that same day for the same reason.  The inmates were observed by a correctional officer on a video monitor both entering the same cell.  A short while later, Williams quickly

2

ran out of the cell and immediately ran back in.

On December 16, 2008, Williams was provided a notice of major disciplinary hearing rights, indicating that Officer Holterman had been appointed to act as his staff advocate. Officer Nemetz was substituted as Williams's advocate before the hearing. Nemetz met with Williams on December 22, 2008, and provided him with a Witness Request Form. Williams requested as witnesses Sciortino, inmate Sabir Wilcher and C.O. Lueskow. Captain Shultz denied Williams's request for witness Lueskow because he was not the report writer. Because no videotape of the incident was preserved, it was not used at the hearing either in support of or against Williams.

## III.  DISCIPLINARY HEARINGS

Williams had a disciplinary hearing on December 29, 2008 before defendant Lt. Thomas Campbell.  Williams and inmates Sciortino and Wilcher testified.  Campbell considered this testimony, the advocate's statement, the conduct report, two photographs of Sciortino's injuries, page two of Williams' statement and his letter to Captain Laurent dated December 18, 2008.  Campbell noted in his narrative of the disciplinary hearing that there was no page one of Williams's statement and that the letter to Captain Laurent had no information pertinent for the hearing.

Ultimately, Campbell concluded that it was more likely than not that inmate

3

Williams and Sciortino engaged in a physical altercation in cell A-71.  Campbell found Williams guilty of fighting and sentenced Williams to 120 days of disciplinary separation. The reasons that Campbell gave for this disposition were that Williams's actions created a risk of serious injury to another and that Williams was aware that fighting was a violation of the rules.  There is no evidence that defendant Campbell's decision was racially motivated.

Williams appealed this decision to defendant Pollard.  Pollard reduced Williams's penalty to 60 days of disciplinary separation because (1) Williams had not had similar conduct reports in recent years and (2) the evidence suggested Williams had committed the lesser included offense of disruptive conduct.

Sciortino's disciplinary hearing was held on December 30, 2008.  Lieutenant Stulteen was the hearing officer and considered Sciortino's written statement and the conduct report. Stulteen found that it was more likely than not that Sciortino fought with inmate Williams and found him guilty of fighting.  Because it was Sciortino's first conduct report in the past year and the first conduct report for fighting, Stulteen gave Sciortino 60 days loss of recreation.  Sciortino appealed the decision to defendant Pollard.  Although Pollard indicated that Sciortino's behavior suggested a violation of disruptive conduct, a lesser included offense, he found that the penalty was appropriate.

## IV.  CONDITIONS IN SEGREGATION UNIT

Williams was confined in the segregation unit from December 12, 2008, to February 6, 2009.  In the segregation unit, nightlights illuminate the cells.  These lights contain a 5-watt fluorescent bulb.  The purpose of these lights is to facilitate the monitoring of inmate cells at night, which is necessary for security reasons and to check on the welfare of the inmates.  The amount of illumination used is the minimum amount that sufficiently addresses security concerns and allows staff to adequately observe inmates.  Inmates may cover their eyes with a towel, washcloth or T-shirt while sleeping.

Although there is a certain amount of noise in the prison, the cell construction at the institution is designed to help mitigate excessive noise.  Decibel levels are checked regularly to insure that they are at an acceptable level in accordance with Occupational Safety and Health administration standards.  If an inmate is making excessive noise, he is given a conduct report.

In the segregation unit, temperatures are continuously monitored. When inmates complain that their cells are cold they are given additional blankets.  Williams was issued a total of four blankets.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine

5

issues of material fact and the moving party is entitled to judgment as a matter of law.  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  Nonetheless, the party that bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, through the proposal of specific facts, that there is a genuine issue of material fact requiring a trial.  *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The applicable substantive law will dictate which facts are material.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  Further, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).  The court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

## I.  DUE PROCESS CLAIM

Williams contends that he was denied procedural due process protections when

6

defendant Campbell held an unfair disciplinary hearing and when defendant Pollard upheld the decision finding him guilty of fighting.  "A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements:  (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient."  *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).  It is open to question whether Williams's 60-day confinement in segregation at a maximum security institution constitutes a protected liberty interest. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) ("[A] liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." (emphasis in original)).  The court need not, however, resolve that issue because the undisputed facts show that no reasonable jury could find that the procedures Williams was afforded were constitutionally deficient.  Thus, for purposes of this opinion, the court will assume Williams had a protected liberty interest.

To provide a prisoner due process in disciplinary proceedings, the institution must give him:

> (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Scruggs*, 485 F.3d at 939 (quoting *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992)).

The undisputed facts show that Williams received advanced written notice of the claimed violation and the opportunity to call witnesses and present documentary evidence. Williams and his requested witnesses Wilcher and Sciortino testified at the hearing.[2]  Also, he was allowed to submit a written statement.  Further, defendant Campbell gave a written explanation of the evidence he relied upon and the reasons for the disciplinary action.  While Williams alleges in his complaint that defendant Campbell was not an impartial decision maker, he has submitted no evidence that indicates any partiality on the part of Campbell.

Finally, disciplinary decisions must be supported by at least "some evidence."  *Scruggs*, 485 F.3d at 941.  "This is a lenient standard, requiring no more than a modicum of evidence."  *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (internal citations and quotations omitted).   In this case, defendant Campbell relied on the conduct report after finding the report writer more credible than the testimony of Williams and Sciortino.  This report is sufficient to satisfy the lenient evidentiary standard.

For all of these reasons, Williams has failed to adduce sufficient evidence from which

_____

[2]As noted Campbell denied Williams request that C.O. Lueskow testify because he was not the report writer.  Williams has presented no evidence indicating: () this was not so, (2) this was a pretext, or (3)Lueskow's imprtance as a witness.

a jury could reasonably conclude that he was denied procedural due process.

## II. EQUAL PROTECTION CLAIM

To prevail on his equal protection claim, Williams must prove that he suffered a discriminatory effect; that is, he was treated differently from similarly situated individuals in the unprotected class. *Chavez v. Ill. State Police*, 251 F.3d 612, 636 (7th Cir. 2001). Williams must also show that defendants acted with a discriminatory purpose. *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001). Consequently, a plaintiff cannot rely solely on different treatment as evidence of unconstitutional conduct, but rather must demonstrate that the defendant treated him differently because of his race. *McNabola v. Chi. Trans. Auth.*, 10 F. 3d 301, 513 (7th Cir. 1993). This Williams has not done.

Williams contends that defendant Pollard violated his equal protection rights when he upheld a punishment against Williams that was more severe than the one imposed on a white inmate. In this case, the inmates were found guilty of fighting by two different hearing officers. While Williams was given a harsher punishment than Sciortino, the undisputed facts establish that Sciortino (the white inmate) had not had a conduct report in the past year and had <u>no</u> previous conduct report for fighting. By contrast, Williams had a prior conduct report for fighting. Moreover, in affirming the decision finding Williams guilty, defendant Pollard significantly reduced the amount of time Williams had to spend in segregation. Although his

9

penalty was remained harsher than Sciortino's penalty, no reasonable jury could leap to the conclusion that the remaining difference was attributable to race rather than the differences in the inmates' prior conduct records, especially when Williams has presented no evidence of racial animus or bias on the part of either defendant.  Accordingly, defendants are entitled to judgment in their favor on Williams' equal protection claims.

## III.  EIGHTH AMENDMENT CLAIM

Finally, Williams claims that his Eighth Amendment rights were violated when defendant Campbell and Pollard failed to address the harsh conditions he was suffering in disciplinary segregation.  The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Depending on the exact circumstances, cold temperatures, constant illumination and loud noise may well subject a prisoner to an unnecessary infliction of pain.  *E.g., King v. Frank*, 328 F. Supp. 2d 940, 946 (W.D. Wis. 2004) (severe and prolonged noise causing sleep deprivation may state Eighth Amendment claim; constant illumination may violate Eighth Amendment if it causes sleep deprivation).  To prevail on an Eighth Amendment claim, however, an inmate must show that state employees acted with deliberate indifference to the risk of harm to the inmate.  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

In this case, the undisputed facts show that the constant illumination of the 5 watt

nightlight in Williams's cell was necessary for security reasons.  Further, the facts show defendants monitor the noise levels and the temperatures in the segregation unit.  Williams has presented no evidence to the contrary.  Further, Williams has presented no evidence that he suffered any harm from these conditions or that defendants Campbell and Pollard were deliberately indifferent to any risk of harm to him.  Defendants are, therefore, entitled to judgment in their favor on this claim as well.

## ORDER

IT IS ORDERED that:

(1)     Defendants William Pollard and Lt. Thomas Campbell's  motion for summary judgment, dkt. #18, is GRANTED.

(2)     The clerk of court is directed to enter judgment in favor of defendants William Pollard and Lt. Thomas Campbell and close the case.

Entered this 8th day of October, 2010.

BY THE COURT:

/s/
WILLIAM M. CONLEY
District Judge

11